## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 38705

| | | |
|---|---|---|
| JOHN M. MC VICARS and JULIE MC VICARS, husband and wife, | ) ) ) | Lewiston, April 2013 Term |
| Plaintiffs-Respondents, | ) ) ) | 2014 Opinion No. 22 |
| v. | ) ) | Filed: February 20, 2014 |
| | ) ) | Stephen W. Kenyon, Clerk |
| BRET CHRISTENSEN and EDDIEKA B. CHRISTENSEN, husband and wife, and BAR DOUBLE DOT QUARTER HORSES, LLC, an Idaho limited liability company, | ) ) ) ) ) | SUBSTITUTE OPINION

THE SUBSTITUTE OPINION OF THE COURT ISSUED FEBRUARY 19, 2014 IS HEREBY WITHDRAWN. |
| Defendants-Appellants. | ) ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Carl B. Kerrick, District Judge

District court judgment declaring a nuisance, <u>vacated and remanded</u> for further proceedings.

Charles A. Brown, Lewiston, argued for appellants.

Landeck & Forseth, Moscow, for respondent. Ronald J. Landeck argued.

---

BURDICK, Chief Justice

This appeal arises from a Nez Perce County district court's finding that Bret and Eddieka Christensen's building constituted a private nuisance to John and Julie McVicars. In 2006, the Christensens began construction of a fabric building adjacent to the property line shared with the McVicarses. After its completion, the McVicarses filed a nuisance action alleging that increased noise, traffic, and dust diminished the value of their property and interfered with the enjoyment of their property. After a bench trial, the district court ruled that the Christensens' course of conduct unreasonably interfered with the McVicarses' enjoyment of their property and was therefore a private nuisance. Additionally, the district court found that there was no evidence to support the McVicarses' claim of public nuisance or the Christensens' unclean hands defense.

We hold that the district court erred to the extent that it considered the building's size and proximity to the McVicarses' property to constitute a nuisance.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The McVicarses purchased their property and built a home in Nez Perce County's Tammany Creek area in 1991. At that time, their five-acre property was bordered on the north and west, in an "L" shape, by property owned by Orie and Lisa Kaltenbaugh. The Kaltenbaughs engaged in various agricultural activities on their property, which included the pasturing of llamas and cattle. The Christensens purchased the Kaltenbaugh property in 2003 and conducted a horse operation on the land. In 2006, the Christensens obtained a siting permit and began construction of an indoor riding arena building on the southernmost portion of their property in close proximity to the McVicarses' property. The relationship between the McVicarses and Christensens deteriorated rapidly once the building was completed.

As described by the district court, the building at issue is referred to as a Coverall building and consists of a steel structure frame covered by a white fabric known as a membrane. The building is fully enclosed by the membrane and has dimensions of 120 feet wide by 260 feet long, giving the building 31,200 square feet of floor space.[1] The height of the building was estimated to be between 42 and 50 feet at its peak. The Christensens built a gravel road parallel to the property line that served as the only access point for the fabric building.

On July 16, 2007, the McVicarses filed a complaint alleging that the fabric building was a private and public nuisance. The complaint alleged that odor, dust, and flies accumulated from the horse operation, and that noise and light from the fabric building interfered with the McVicarses' use of their property. As a remedy, the McVicarses sought money damages, the dismantling of the building, and a permanent injunction on the current uses of the building. The McVicarses filed an amended complaint on December 29, 2009, which elaborated upon the private nuisance claim, highlighting that the McVicarses sought redress of the Christensens' use of the building and not just the structural integrity of the building.

A six-day bench trial took place on non-consecutive days between August 30 and October 8, 2010. Evidence and testimony were presented regarding the safety and use of the

---

[1] For the sake of comparison, the building is roughly four to five stories in height, only fourteen yards shorter than a football field in length, and the width of twelve semi-trailers placed side-by-side.

fabric building and the impact on the McVicarses. Additionally, the Christensens and the McVicarses submitted written closing statements at the request of the district court.

The district court issued its Findings of Fact, Conclusions of Law, and Order on February 8, 2011. In it, the district court found that the Christensens' course of conduct unreasonably interfered with the McVicarses' enjoyment of their property and was therefore a private nuisance. The district court also found that there was no evidence to support the McVicarses' claim of public nuisance or the Christensens' unclean hands defense. A final judgment was issued on February 28, 2011, which included a mandatory injunction requiring the Christensens to remove the fabric building from its current location and to fully abate the cumulative effect of noise, dust, traffic, lights, and odor that constituted the private nuisance.

In response to a motion by the Christensens, the district court issued a stay on the enforcement of the judgment until the appeals process had concluded. In a separate order, the district court denied motions from both parties for attorney fees and costs, finding that both parties prevailed in part and were unsuccessful in part. The Christensens timely filed a notice of appeal on April 7, 2011.

## II. ISSUES ON APPEAL

1. Whether the district court erred in finding that the Christensens' conduct constituted a private nuisance.

2. Whether the district court erred in the remedies it imposed to abate the private nuisance, including the grant of an injunction requiring the Christensens to remove the fabric building from its current location, and the limitation of vehicle traffic on a section of the Christensens' property.

3. Whether the district court erred in finding that the Right to Farm Act does not apply to this case.

4. Whether the district court erred in finding that the doctrine of unclean hands does not apply to this case.

5. Whether either party is entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

Appellate review of the lower court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. A trial court's findings of fact in a bench trial will be liberally construed on appeal in favor of the judgment entered, in view of the trial court's role as trier of fact. It is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. We will not substitute our view of the facts for the view of the district court. Instead, where findings of fact are based on substantial

3

evidence, even if the evidence is conflicting, those findings will not be overturned on appeal.

*Crea v. Crea*, 135 Idaho 246, 249, 16 P.3d 922, 925 (2000) (internal citations omitted). "However, this Court exercises free review over questions of law." *W. Heritage Ins. Co. v. Green*, 137 Idaho 832, 835, 54 P.3d 948, 951 (2002).

## IV. ANALYSIS

### A. The district court abused its discretion by requiring the Christensens to move the location of their building.

On appeal, the Christensens argue that the district court erred when it found that the cumulative effects of their conduct constituted a private nuisance to the McVicarses. Idaho Code section 52-101 defines a nuisance as "[a]nything which is injurious to health or morals, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." "Every nuisance not defined by law as a public nuisance or a moral nuisance, is private." I.C. § 52-107. "A nuisance per se is that which is a nuisance at all times and under all circumstances. A nuisance in fact is that which is not inherently a nuisance, or one per se, but which may become such by reason of surrounding circumstances, or the manner in which conducted." *Rowe v. City of Pocatello*, 70 Idaho 343, 348, 218 P.2d 695, 698 (1950).

Remedies for nuisance can include abatement, injunction, and damages. I.C. § 52–111. While a structure that is a nuisance in fact may be enjoined, injunctions are disfavored where the structure serves a useful purpose and the nuisance arises out of a legitimate business or activity's particular manner of operation. *See Corp. of Presiding Bishop of Church of Jesus Christ of Latter Day Saints v. Ashton*, 92 Idaho 571, 577, 448 P.2d 185, 191 (1968). For example, in the context of baseball fields in residential neighborhoods, this Court has stated that where "baseball constitutes a nuisance because of particular objectionable features associated with it, a court should not enjoin the entire activity, but rather should only attempt to eliminate the objectionable features." *Id*. Thus, "the common result in these cases is not to enjoin the activity, but to issue a decree enjoining the operation of lights or activity after a certain hour or imposing certain other reasonable restrictions on the activity." *Id.*

Here, the district court issued an order that found:

> In the case at hand, the cumulative effect of the Defendants' use of their property west of the Plaintiffs' home since the fabric building was constructed results in a private nuisance. The Defendants' use of this portion of their property

4

unreasonably interferes with the Plaintiffs' enjoyment of their property or with the enjoyment of the Plaintiffs' lives while using the property.

The district court analyzed the accumulated effects separately. As categorized by the district court, these effects are: the size and placement of the fabric building, changes in the use of the Christensens' property located west of the McVicarses' home, building lights and sound system, increased traffic that causes dust, odor, the evolution of the Christensens' hay sales business, and the devaluation of the McVicarses' property. As to the size and placement of the fabric building, the district court held that the Christensens' decision to construct a fabric building of such a magnitude in close proximity to the McVicarses' home is "unreasonably offensive to the senses, and under all the circumstances unreasonably interferes with the Plaintiffs' enjoyment of their property." The district court then issued an injunction requiring the Christensens to remove the fabric building from its current location and to fully abate the cumulative effect of noise, dust, traffic, lights, and odor that constitute the private nuisance. We hold that the grant of the injunction requiring the Christensens to remove the building was in error.

The district court erred to the extent that it considered the building's size and proximity to the McVicarses' property to constitute a nuisance and used that premise to enjoin the building from its current location. Generally, "every man may regulate, improve, and control his own property, may make such erections as his own judgment, taste, or interest may suggest, and be master of his own without dictation or interference by his neighbors, so long as the use to which he devotes his property is not in violation of the rights of others, however much damage they may sustain therefrom." *White v. Bernhart*, 41 Idaho 665, 669–70, 241 P. 367, 368 (1925). A landowner does not have the right under nuisance law to prohibit upon adjoining land the erection of structures that he or she considers not to be aesthetically pleasing. *Id.* (holding that the fact that a building "is unsightly or out of harmony in construction with adjacent buildings, and therefore not pleasing to the eye, would not make it offensive to the senses."). The exception to this rule is where a structure has no useful purpose and is only erected to injure a neighbor. *Sundowner, Inc. v. King*, 95 Idaho 367, 509 P.2d 785 (1973) (holding that an 85-by-18-foot sign that obscured approximately 80 percent of an adjacent building constituted a nuisance because its sole purpose was to injure a neighbor).

In this case, the Christensens lawfully constructed the building on their own property in accordance with all relevant zoning ordinances and the McVicarses do not contend that the building serves no useful purpose. While the proximity and size of the building may have

5

contributed to the effect noise, dust, traffic, lights, and odor had on the McVicarses' quiet enjoyment of their home, the building's size and proximity do not in and of themselves constitute a nuisance. The allegations of noise, dust, lights, and odors are objectionable features of how the building is being used. Like the traffic and lights associated with a baseball game, the activities surrounding the Cristensens' building and the effects of those activities, may still amount to a nuisance in fact. The court should fashion reasonable restrictions to limit such interference with the McVicarses' use and enjoyment of their property rather than completely enjoining the building from its current location. Therefore, the district court abused its discretion in requiring the Christensens to move the building.

**B. The district court did not err in finding that the Right to Farm Act does not apply to this case.**

The district court held that the Right to Farm Act (RTFA) did not apply because the act applies to the encroachment of urbanizing areas and in circumstances where there have been changes in the surrounding nonagricultural activities. On appeal, the Christensens argue that the district court erred by not contemplating the applicability of the RTFA on expansion in an existing agricultural area.

Idaho Code section 22-4501 states the legislative findings and intent behind the RTFA:

> The legislature finds that agricultural activities conducted on farmland in urbanizing areas are often subjected to nuisance lawsuits, and that such suits encourage and even force the premature removal of the lands from agricultural uses, and in some cases prohibit investments in agricultural improvements. It is the intent of the legislature to reduce the loss to the state of its agricultural resources by limiting the circumstances under which agricultural operations may be deemed to be a nuisance. The legislature also finds that the right to farm is a natural right and is recognized as a permitted use throughout the state of Idaho.

To accomplish this intent, I.C. § 22-4503 outlines an exception to the private nuisance statutes in specific circumstances:[2]

> No agricultural operation, agricultural facility or expansion thereof shall be or become a nuisance, private or public, by any changed conditions in or about the surrounding nonagricultural activities after it has been in operation for more than one (1) year, when the operation, facility or expansion was not a nuisance at the time it began or was constructed. The provisions of this section shall not apply when a nuisance results from the improper or negligent operation of an agricultural operation, agricultural facility or expansion thereof.

---

[2] Session Law 2011, ch. 229, § 4, effective July 1, 2011, amended I.C. § 22-4503, but did not change any of the language pertinent to this appeal.

6

The language of I.C. § 22-4503 clearly carves out an exception where a change in nonagricultural activities come to an existing agricultural operation or facility. The statute does not apply in this case because the McVicarses' home predated the building in question, and there is no evidence of a change in the nonagricultural activities in the area near the fabric building. This makes the present case similar to the situation in *Payne v. Skaar*, 127 Idaho 341, 344, 900 P.2d 1352, 1355 (1995).

In *Payne*, neighboring citizens and the city of Idaho Falls alleged that a cattle feedlot constituted a public and private nuisance. *Id*. at 343, 900 P.2d at 1354. Although the feedlot coexisted with the neighborhood for several years, residents of the neighborhood complained of increased odors and dust as the feedlot expanded in capacity. *Id*. At trial, Skaar moved for a directed verdict on the grounds that the RTFA protected expanding agricultural operations from being declared a nuisance. *Id*. at 344, 900 P.2d at 1355. The district court denied the motion, and this Court addressed the issue on appeal:

> There is little dispute that the neighborhood surrounding the feedlot has remained substantially unchanged during the Skaar feedlot's existence. Indeed, many of the Citizens' residences predated the Skaar feedlot. Citizens claimed the feedlot was a nuisance because of expansions of the feedlot operation, not a change in the surrounding area. The district court correctly concluded the RTFA does not wholly prevent a finding of nuisance in circumstances of an expanding agricultural operation surrounded by an area that has remained substantially unchanged. Accordingly, the district court committed no error in denying Skaar's motion for a directed verdict.

*Id*. Like in *Payne*, the changes here come from the offending nuisance, not from changes in the character of the surroundings. Therefore, under this Court's opinion in *Payne* and the clear language of I.C. § 22-4503, we hold that the RTFA does not apply to this nuisance action.

### C. We decline to address whether the district court erred in finding that the doctrine of unclean hands does not apply to this case.

In its Order, the district court held that although the Christensens asserted the clean hands doctrine as a defense they offered no evidence to support the argument. "The clean hands doctrine 'stands for the proposition that a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue.'" *Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 370, 179 P.3d 323, 333 (2008) (quoting *Gilbert v. Nampa Sch. Dist. No. 131*, 104 Idaho 137, 145, 657 P.2d 1, 9 (1983)).

On appeal, the Christensens argue that the district court erred in not applying the doctrine, but provide no authority or further argumentation in their Appellant's Brief. This Court "will not consider an issue not 'supported by argument and authority in the opening brief.'" *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (quoting *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008)). Since this argument was not supported with either argument or authority, we decline to address it.

### D.  Attorney fees

Both parties request attorney fees on appeal pursuant to I.C. § 12-121. Neither party pursued the matter frivolously, unreasonably, or without foundation. Attorney fees are denied to both parties. No costs to either party.

## V. CONCLUSION

Because the building's size and proximity do not in and of themselves constitute a nuisance, the district court erred in requiring the Christensens to move the building from its current location. Therefore, the case must be remanded for analysis of whether the cumulative effects of the activities on the property constitute a nuisance in fact when the court does not consider the mere size and proximity of the building alone to constitute a nuisance. Upon remand all legal remedies are available to the court.  We vacate the judgment and remand for further proceedings. No attorney fees or costs on appeal.

Justices EISMANN, J. JONES, and W. JONES, **CONCUR.**

HORTON, J., concurring.

I fully concur in the Court's decision. The Court properly concludes that the size and location of the Christensens' fabric building does not constitute a private nuisance that may be abated by requiring its relocation. Given that the district court focused on the cumulative effect of the size and location of the building as well as the Christensens' activities (and those activities the Christensens permit third parties to engage in) on their property, I believe that the judgment must be vacated and this matter remanded for further proceedings.

That being said, it is clear to me that, upon remand, the district court could properly determine that the Christensens have created a nuisance by engaging in or permitting activities on their property that have resulted in the McVicars' complaints about noise, light, offensive odors, dust and flies. If the district court were to find that the activities on the Christensens' property constitute a nuisance, it could direct the Christensens to abate the nuisance by requiring

8

that such activities be conducted (1) at a specified distance from the McVicars' property and/or (2) only at specified times. Although such relief might well lead the Christensens to conclude that the building must to be relocated in order to resume the uses to which it is presently being put, that is a decision that the Christensens, not the district court, must make.